**VIAM CORPORATION and Vehicle Power Accessories, Plaintiffs–Appellants,**

v.

**IOWA EXPORT–IMPORT TRADING CO., and Spal S.r.l., Defendants–Appellees.**

No. 95–1262.

United States Court of Appeals, Federal Circuit.

May 22, 1996.

Charles E. Wills, Charles E. Wills Law Corporation, Los Angeles, California, argued, for plaintiffs-appellants.

Daniel J. Cosgrove, Zarley, McKee, Thomte, Voorhees & Sease, P.L.C., Des Moines, Iowa, argued, for defendants-appellees. With him on the brief was Bruce W. McKee.

Before MICHEL, PLAGER, and RADER, Circuit Judges.

PLAGER, Circuit Judge.

Believing itself threatened with a suit for patent infringement, plaintiff Viam Corporation, a California company, brought a de-

claratory judgment action in the California district court against the defendants, Spal Corporation, an Italian company and owner of the patent at issue, and its exclusive licensee, Iowa Export–Import Corporation, an Iowa company. The complaint alleged noninfringement and invalidity of the patent. The Italian company moved for dismissal of the suit on the ground that the court was without personal jurisdiction over it, and the Iowa company moved for dismissal on the grounds that without the Italian company, which it considered an indispensable party to the suit, it too was entitled to dismissal. The district court granted the motions. *Viam Corp. v. Iowa Export–Import Trading Co.*, 1995 WL 544971, 35 USPQ2d 1505 (C.D.Cal. February 13, 1995).

Viam appeals. The case requires us to examine principles of due process under the Fifth Amendment as they affect personal jurisdiction over a foreign entity in the context of a declaratory judgment patent action.

## BACKGROUND

Spal is an Italian corporation that makes universal power windows for cars. Iowa Export–Import Corporation ("Iowa Export") is an Iowa corporation with the exclusive right to advertise, market and distribute Spal products in North America. Spal ships the products from Italy, through Canada, to Des Moines, Iowa. Viam is a California corporation that competes with Iowa Export and Spal in the automobile-power-accessories market.[1]

Iowa Export's lawyers wrote to Viam stating that Viam's Kodak universal power kit, which Viam was displaying at a trade show in Las Vegas, was covered by a United States patent owned by Spal (the '386 patent). Viam promptly filed a declaratory judgment action in the Central District of California against Iowa Export and Spal, seeking a declaration that the '386 patent is invalid and that Viam does not infringe the patent. Spal moved to dismiss on the basis that process

**1.** Viam Corporation moved to substitute as plaintiff Vehicle Power Accessories (VPA), a former division of Viam that had become a separate California corporation. Viam urged substitution because VPA had taken over the part of Viam's business potentially infringing the '386 patent. Viam agreed to remain a "nominal" plaintiff. The district court granted this motion. References to "Viam" in this opinion are references to both Viam and VPA.

had not been served properly and that the trial court lacked personal jurisdiction over Spal.

The trial court granted Spal's motion to dismiss, finding that service on Spal had thus far been deficient under Federal Rule of Civil Procedure 4 and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), and that Spal's limited contacts with California did not constitute the "minimum contacts" required to support personal jurisdiction under *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Given its separate finding of no personal jurisdiction over Spal, the trial court did not let Viam attempt to perfect service on Spal in compliance with the Hague Convention.

Iowa Export then moved to dismiss the complaint on the grounds that Spal was a necessary party under Fed. R. Civ. Proc. 19. Because Iowa Export had filed its answer in the case, the trial court treated the motion as one for judgment on the pleadings. The trial court granted the motion, finding that dismissal is required when an indispensable party cannot be joined under Rule 19, that Spal was an indispensable party to an adjudication of invalidity because it owned the patent and had retained substantive rights in its patent notwithstanding its exclusive marketing agreement with Iowa Export, and that the lack of personal jurisdiction over Spal prevented the court from joining Spal.

### DISCUSSION

#### 1.

■ We review the district court's determination that it lacks personal jurisdiction over Spal, an issue of law, without deference to the view of the district court. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543, 33 USPQ2d 1505, 1506 (Fed.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). In order to determine whether personal jurisdiction exists over a defendant, the court must determine whether jurisdiction lies under both the applicable state long-arm statute and the Due Process Clause of the Federal Constitution. The California long-arm statute extends the reach of personal jurisdiction to the limits of the Federal Constitution. *See Michigan Nat'l Bank v. Superior Ct.*, 23 Cal.App.3d 1, 6, 99 Cal.Rptr. 823, 826 (1972); *Belmont Indus., Inc., v. Superior Court*, 31 Cal.App.3d 281, 285, 107 Cal.Rptr. 237, 239–40 (1973). The question before us, then, is whether sufficient contacts exist between Spal and the State of California to satisfy the requirements of *International Shoe.*[2]

■ Courts use various ways to describe whether, in a given case, there have been sufficient contacts between the defendant over whom jurisdiction is asserted and the forum State. Some cases talk in terms of "specific jurisdiction," usually with reference to a situation in which the cause of action arises directly from the defendant's contacts with the forum State. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985). For that purpose, specific jurisdiction is to be distinguished from "general jurisdiction," referring to the situation in which the defendant's contacts at issue have no necessary relationship to the cause of action. Although that distinction may be analytically helpful in some fact situations, it is not useful here.

■ The analytical tool useful in cases in which the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of defendant's products is generally referred to as the "stream of commerce" theory. In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 30 USPQ2d 1001, (Fed.Cir.1994), this court, in determining whether a federal district court had personal jurisdiction over an out-of-state corporation accused of patent infringement, adopted and applied the stream of commerce theory. In reaching

---

**2.** The Supreme Court's International Shoe jurisprudence is set in the context of state and diversity cases, which turn on 14th Amendment due process. In patent suits we apply the same test to personal jurisdiction questions arising under the 5th Amendment. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565–69, 30 USPQ2d 1001, 1006–1009 (Fed.Cir.1994); *Akro Corp. v. Luker,* 45 F.3d 1541, 1544–45, 33 USPQ2d 1505, 1508 (Fed.Cir.1995).

that result, we first concluded that the choice of law—whether to apply stream of commerce theory, and which version to apply (*see Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987))—was a decision for this court; our courtesy rule under which we are guided by the law of the regional circuit on certain procedural matters was not applicable to an issue which, though procedural in nature, was so intimately involved in the substance of enforcement of the patent right.

Subsequently, in *Akro Corp. v. Luker,* 45 F.3d 1541, 33 USPQ2d 1505 (Fed.Cir.1995), we took the same approach to a case in which the out-of-state party was the patentee, rather than the alleged infringer. We saw no reason to vary the choice-of-law rule, as between out-of-state infringers and patentees. *Id.* at 1543. The choice of law regarding the applicable rule governing personal jurisdiction thus was to be the Federal Circuit rule, not the regional circuit rule.

All the reasons for adopting and applying the stream of commerce theory to the question of personal jurisdiction over an out-of-state alleged infringer as defendant, fully explored in *Beverly Hills Fan,* are equally applicable to the same question regarding an out-of-state patentee as defendant. When the patentee sues the alleged infringing tortfeasor who is the out-of-state defendant, it is easy to see why the defendant should be held to respond if there have been sufficient contacts with the forum State. It may at first blush seem strange in a declaratory judgment action to apply the same standard to the patentee, when it is the infringer, the putative tortfeasor, who is suing the (presumably) innocent patentee.

But the question of personal jurisdiction is not a function of wrongdoing. Rather it is a question of the power of a judicial forum to decide the issues brought before it. A patentee who seeks to enforce its patent may bring an infringement action in a proper forum, and issues regarding the validity and enforceability of the patent may be raised by the defendant. Under our law, a potential defendant in an infringement suit may, in a proper case, preempt the patentee and initiate a suit challenging the enforcement of the patent. The issues on the merits are essentially the same in either situation; the test for personal jurisdiction, for the forum's power to hear the issues, should be the same. *See Akro,* 45 F.3d at 1545, 33 USPQ2d at 1508. Furthermore, as in *Beverly Hills Fan,* we need not join the debate in *Asahi* as to which version of the stream of commerce theory is the correct one, because under either theory the result we reach here would be the same. We proceed, then, to decide the issue with those background rules before us.

2.

■ "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. "Minimum contacts" is understood to require that a defendant has "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). And, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980).

■ In *Akro,* a declaratory judgment action against a patentee, we analyzed the problem there by asking whether the patent holder "purposefully directed his activities at residents of [the forum] and, if so, whether the litigation results from alleged injuries that arise out of or relate to those activities." *Akro,* 45 F.3d at 1545, 33 USPQ2d at 1508 (internal quotes omitted). In this case, Spal's marketing agreement and practices with Iowa Export establish a regular distribution channel through which Spal purposefully directed its activities. Iowa Export has

the exclusive right to advertise, market and distribute products in the United States. In advertising and selling the invention, Iowa Export uses a Spal catalog which it has obtained from Spal. Furthermore, Iowa Export's Director of North American Sales reported to Spal on a regular basis as to the sales of Spal products in the United States, and Iowa Export sold approximately $2.4 million worth of Spal products in the United States in 1992. These facts clearly establish a regular chain of distribution from Spal through Iowa Export to various markets in the United States.

Furthermore, Spal did not simply place its product into the stream of commerce. Spal knowingly and intentionally exploited the California market through its exclusive distributor's advertising in California, and by establishing channels for providing regular advice in California. Iowa Export advertised and sold, and is presently advertising and selling, Spal products, including the subject of the '386 patent, in California, and Spal provided Iowa Export numerous sales aids which Spal knew would be used in California for selling Spal products there. As in *Beverly Hills Fan,* "defendants, acting in consort, placed the ... device in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan,* 21 F.3d at 1566, 30 USPQ2d at 1008.

Here Spal purposefully directed its activities at the forum State and Iowa Export, acting as Spal's agent, purposefully initiated the interaction with Viam that resulted in the instant suit.[3] There is sufficient connection between the activity and the litigation to satisfy this prong of the *International Shoe* Due Process test.

█ Minimum contacts is a necessary, but not a sufficient, condition to finding personal jurisdiction. *Akro,* 45 F.3d at 1545–46,

33 USPQ2d at 1508–09; *Beverly Hills Fan,* 21 F.3d at 1568, 30 USPQ2d at 1009. Once a plaintiff makes the required showing that there have been sufficient minimum contacts by the out-of-state defendant with the forum State, the defendant may still defeat jurisdiction by marshaling a compelling case against jurisdiction on the grounds that its exercise would be unreasonable, contrary to concepts of fair play and substantial justice. *Id.* The test of unreasonableness is a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

The inquiry under this test includes a balancing of (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies. *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Put succinctly, "such defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.' " *Akro,* 45 F.3d at 1549, 33 USPQ2d at 1511, quoting *Beverly Hills Fan,* 21 F.3d at 1568, 30 USPQ2d at 1009.

█ Spal's arguments on this issue fall far short of persuading us that it would be inherently unfair to allow this suit to go forward. It is not unfair to require that an out-of-state patent holder who asserts its rights through a local distributor in its regular chain of distribution against an in-state

---

**3.** We express no opinion whether the instant suit is properly maintainable as a declaratory judgment action, that is, whether the evidence supports the conclusion that an actual controversy exists sufficient to establish subject matter jurisdiction for such an action, or whether the district

court, in the exercise of its discretion, should decline to hear the matter on the grounds of "considerations of practicality and wise judicial administration." *See Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995).

party be held to have subjected itself to the due process of the relevant jurisdiction. Otherwise, out-of-state corporations would be able to set up domestic fronts through which they could do business without subjecting their patents to the rigorous scrutiny demanded by United States patent law. Nor is it unfair to refuse to allow a foreign manufacturer to insulate itself from the jurisdiction of the courts by use of an exclusive distributor. Furthermore, the state has definite and well-defined interests in commerce and scientific development. If defendant's connections to the forum are so strong as to impact on those interests, as is true in this case, allowing the forum to exercise jurisdiction cannot be said to be unfair.

Spal argues that it is unduly burdensome to require it to litigate in California, rather than in Iowa, the home state of its exclusive agent. Yet according to their own submission to this court, Spal and Iowa Export have initiated a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court in the Central District of California. It appears therefore that Spal has found a way to shoulder successfully the burden of litigating in California. In light of this fact, and the substantial contacts detailed above, Spal's activities in the forum are "not so attenuated" as to defeat a finding of jurisdiction.

### 3.

Before a court may exercise personal jurisdiction over a defendant, the defendant must be amenable to service of process under some federal or state statute. *Akro*, 45 F.3d at 1543–44, 33 USPQ2d at 1507. In this case, Viam contends that the Hague Convention provides for Spal's amenability to service of process. Federal Rule of Civil Procedure 4 reads:

[u]nless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents....

Fed.R.Civ.P. 4(f)(1) (1995). Both parties concede that service under the Hague Convention would suffice.

The trial court found that Viam's efforts to serve Spal with summons and complaint failed to accord with then-existing Hague Convention procedures. When Viam attempted to correct the problem by serving Spal properly under the Hague Convention, the district court refused to allow Viam to attempt correct service because it considered such efforts futile in light of its ruling on personal jurisdiction.

Viam now asks that it be afforded a reasonable amount of time to initiate the process for proper service upon defendant Spal in compliance with the Hague Convention. The district court's decision was clearly based on the court's belief that it lacked jurisdiction over the defendant. That part of the court's judgment is therefor vacated.

### CONCLUSION

We reverse the district court's dismissal of Viam's suit against Spal and Iowa Export.[4] We remand to the district court for further proceedings consistent with this opinion.

### *REVERSED IN PART, VACATED IN PART, AND REMANDED.*

Costs to Viam.

---

4.  The district court, and the defendants, were of the view that the claims against Iowa Export and Spal could be brought in Iowa. We offer no opinion on that question. However, in reversing the dismissal based on lack of personal jurisdiction, we do not intend to foreclose other grounds on which the district court may conclude that the case is not properly before it. Such grounds, if any, are not before us here.