**DIGITAL CONTROL INCORPORATED,**
Plaintiff,

v.

**BORETRONICS INC. and Willie Lessard, Defendants.**

No. C01–0074L.

United States District Court, W.D. Washington, At Seattle.

Sept. 6, 2001.

Brian Chung Park, Dorsey & Whitney LLP, Seattle, WA, for Digital Control Inc, a Washington corporation, Plaintiff.

Stuart R. Dunwoody, Davis Wright Tremaine LLP, Seattle, WA, Jeffrey R. Stone, Kurt J. Niederluecke, Briggs & Morgan, St Paul, MN, for Boretronics Inc, a Minnesota corporation, Willie Lessard, a Minnesota resident, Regence Blueshield, a Washington corp., Defendants.

## ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

LASNIK, District Judge.

This matter comes before the Court on "Defendants' Motion to Dismiss for Lack of Personal Jurisdiction." This litigation arises out of defendants' alleged infringement of various patents held by plaintiff on transmitters designed to assist in the remote control of underground drilling operations. Defendants, residents of Minnesota, seek dismissal of plaintiff's

claims for lack of personal jurisdiction. Because this issue is being decided without the benefit of an evidentiary hearing, plaintiff need only make a *prima facie* showing that jurisdiction is proper in this district, with all disputed facts construed in the light most favorable to plaintiff. *See Graphic Controls Corp. v. Utah Med. Prods.*, 149 F.3d 1382, 1383 n. 1 (Fed.Cir. 1998).

■ "The district court's determination of a party's amenability to suit is made by reference to the law of the state in which it sits." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 n. 12 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). Washington's long arm statute, RCW 4.28.185, provides six separate bases for the exercise of jurisdiction, only two of which are potentially applicable here: (1) the "transaction of any business within this state" and (2) the "commission of a tortious act within this state." Despite the rather narrow terms of the statute, the Washington Supreme Court has held that the state's long-arm statute "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 771, 783 P.2d 78 (1989).

■ Both plaintiff and defendants agree that the law of the Federal Circuit determines whether the exercise of personal jurisdiction comports with the requirements of due process in patent infringement actions. The Federal Circuit applies a three-part test: (1) defendants must have "purposefully directed [their] activities at the residents" of the forum state; (2) the injuries for which recovery is sought must have arisen out of or be related to defendants' activities; and (3) the

assertion of personal jurisdiction over defendants must comport with traditional notions of fair play and substantial justice. *Akro Corp. v. Luker*, 45 F.3d 1541, 1545–46 (Fed.Cir.), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995).

■ The relevant facts regarding defendants' contacts with Washington state are undisputed.[1] After designing and manufacturing a product which allegedly infringed on plaintiff's patents, defendants placed advertisements in two industry journals, created a web site on which its products were offered for sale, and maintained a toll-free phone number to handle customer inquiries and orders. The journals, web site, and phone number all had national scope and could be accessed by residents of Washington. Defendants managed to sell one of the offending products to a company in Florida before being notified that plaintiff believed the products infringed their patents. Defendants ceased operations shortly thereafter. Defendants did not receive any inquiries from or make any sales to the citizens of Washington. Other than the nationwide solicitations discussed above, defendants made no other effort to cultivate a market in this state.

Under the facts presented here, the Court finds that defendants' limited contacts with the State of Washington are not such that they "should reasonably anticipate being haled into court" here. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). While there are a few analogous cases which could support plaintiff's assertion of jurisdiction,[2] none of those cases is from the Federal Circuit and they generally involve claims that the Internet adver-

---

1. For purposes of this discussion, the Court will assume, as plaintiff has done, that Mr. Lessard is the alter ego of Boretronics such that the actions and conduct of one should be attributed to the other.

2. *See Haelan Prods., Inc. v. Beso Biological Research, Inc.*, 43 U.S.P.Q.2d 1672 (E.D.La. 1997); *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn.1996).

tisement itself infringed on a patent or trademark. In *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn. 1996), for example, the defendant's web site used a domain address which infringed plaintiff's trademark. Thus, the availability of defendant's web site in the forum state was, in and of itself, a source of continuing injury as plaintiff's potential customers inadvertently hit defendant's site and/or were confused by the similarity of names, products, and services. More importantly for purposes of this motion, the legal analysis in *Inset* is far from compelling: after citing two cases in which national advertising was coupled with inquiries from, correspondence with, and sales to citizens of the forum state, the court jumped to the conclusion that the ready availability of the Internet and its potential to reach thousands of Connecticut residents justified the exercise of jurisdiction over defendant even though there was no indication that the offending web site had actually been seen by a Connecticut resident or that defendant had engaged in any commercial activity within the forum. As recognized by another court, *Inset* represents the "outer limits"

of the personal jurisdiction analysis. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1125 (W.D.Pa.1997).

The vast majority of the cases cited by the parties and the law of the Ninth Circuit require something more than nationwide advertising in order to justify the exercise of personal jurisdiction.[3] Given the nature of the Internet and the purpose behind the jurisdictional analysis, the "web site plus" rule developing in the case law appears to be a good rule of thumb for evaluating jurisdiction-creating contacts in Internet cases. Such an analysis avoids the unjustifiable extreme of universal jurisdiction while at the same time subjecting defendants to suit wherever they have purposely directed their activities. Posting information on a web site tells one very little about the purpose or intent of the advertiser. The medium, by its very nature, provides immediate and virtually uncontrollable worldwide exposure. While the advertiser may in fact be willing to engage in commerce with anyone anywhere in the world, it may simply be seeking customers in a very localized area commensurate with its distribution or service facilities. Until the advertiser is actually

---

**3.** See *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed.Cir.1998) (subsidiary was subject to personal jurisdiction after it responded to e-mail inquiries from the forum, issued price quotes on request, discussed the product with a potential partner, purchased parts from the forum, and sent promotional materials to the forum state; parent's maintenance of web site did not establish personal jurisdiction where all inquiries were forwarded to and handled by the subsidiary); *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244 (10th Cir.2000) (defendant's continued use of a server in the forum state, even after it learned that it was not authorized to do so, that the server was located in the forum state, and that the excess use was causing problems for the true owner, supported jurisdiction); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996) (defendant's contract with plaintiff, which contemplated con-

tinued use of plaintiff's server in the forum state, supported jurisdiction); *CoolSavings.Com., Inc. v. IQ Commerce Corp.*, 53 F.Supp.2d 1000 (N.D.Ill.1999) (defendant's interactive coupon web site was an infringement which, coupled with nationwide access to the site, actual use by citizens of the forum state, and additional efforts to create a market in the forum state, justified the exercise of personal jurisdiction); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997) (web site which resulted in thousands of contracts with residents of the forum state supported jurisdiction). See also *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.1990) (solicitation of business within the forum "will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business"), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

faced with and makes the choice to dive into a particular forum, the mere existence of a worldwide web site, regardless of whether the site is active or passive, is an insufficient basis on which to find that the advertiser has purposely directed its activities at residents of the forum state.

In the case at hand, there is no evidence from which the Court could conclude that defendants have availed themselves of the privilege of conducting business in Washington or otherwise made the purposeful decision to market products to residents of this State. Had defendants received an inquiry or order from a Washington resident, they could then have determined whether, in light of their business plan and the laws of the forum, they wanted to jump into this market and potentially subject themselves to litigation here. Based on the undisputed facts in this case, defendants never had such an opportunity. The Court finds that defendants' use of indiscriminate, nationwide forms of advertising does not give rise to an inference of purposeful or deliberate action toward Washington residents and would not cause defendants to anticipate being haled into court here.[4]

For all of the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of Court is directed to enter judgment without prejudice in favor of defendants and against plaintiff.

---

4. To the extent plaintiff argues that the mere offer to sell the infringing products in Washington creates sufficient minimum contacts with the forum, no injury is associated with the unaccepted offers made in this case and the Federal Circuit has generally considered such a statutory violation only in the context of the "arising out of" prong of the jurisdictional analysis. *See Beverly Hills Fan Co. v.* *Royal Sovereign Corp.,* 21 F.3d 1558, 1571 (Fed.Cir.1994); *3D Sys., Inc.,* 160 F.3d at 1378. Even if an offer to sell an infringing product could create the necessary minimum contacts on which personal jurisdiction could be founded, it is not at all clear that the exercise of jurisdiction over defendants in this case would be reasonable and fair under the third prong of *Akro.*