**FREEDOM WIRELESS, INC., Plaintiff,**

v.

**BOSTON COMMUNICATIONS GROUP, INC., et al., Defendants.**

No. Civ.A. 00–12234–EFH.

United States District Court, D. Massachusetts.

Sept. 3, 2002.

F. Dennis Saylor, IV, Douglas C. Dosko-cil, Cheryl L. Brunetti, Goodwin Procter, LLP, Boston, MA, Michael T. Zeller, Steven D. Anderson, A. William Urquhart, Johanna Y. Ong, Erica P. Taggart, John J. Quinn, Diane C. Hutnyan, Charles K. Verhoeven, Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP, Los Angeles, CA, Robert A. Pressman, Bramson & Pressman, Conshohocken, PA, for Plaintiff.

Philip C. Swain, Vickie L. Henry, John E. Nilsson, Stephen B. Deutsch, Foley, Hoag & Eliot, Boston, MA, Susan E. Stenger, Perkins, Smith & Cohen, Boston, MA, for Boston Communications Group, Inc.

Susan E. Stenger, Lawrence G. Green, Perkins, Smith & Cohen, Boston, MA, Christopher B. Hockett, J. David Hadden, James G. Snell, Eric F. Pierson, Patrick T. Weston, Michael E. Woods, Mary T. Huser, Adrienne L. Taclas, S. Christian Platt, Bingham McCutchen, LLP, East Palo Alto, CA, Rebecca Hooley, Bingham McCutchen, LLP, San Francisco, CA, for At & T Wireless PCS.

Laura Brutman, Edward V. DiLello, Guy Yonay, Frank Maldari, Darby & Darby, PC, New York City, Jennifer L. Conrad, Douglas Kline, Karen L. Febeo, Testa, Hurwitz & Thibeault, LLP, Boston, MA, for Airtouch Communications, Inc.

Laura Brutman, Frank Maldari, Edward V. DiLello, Scott Lindvall, Pierre R. Yanney, James Hanft, Robert Laurenzi, Guy Yonay, Darby & Darby, New York City, Peter D. Baird, Richard A. Halloran, Lewis & Roca, Phoenix, AZ, Jennifer L. Conrad, Testa, Hurwitz & Thibeault, LLP, Boston, MA, Norma G. Formanek, Nan E. Joesten, Farella, Braun & Martel, LLP, San Francisco, CA, Joan M. Griffin, Cooke, Clancy, & Gruenthal, Boston, MA, Bell Atlantic Mobile.

Susan E. Stenger, Perkins, Smith & Cohen, Boston, MA, Christopher B. Hockett, J. David Hadden, James G. Snell, Eric F. Pierson, Patrick T. Weston, Michael E. Woods, Mary T. Huser, Adrienne L. Taclas, S. Christian Platt, Bingham McCutchen, LLP, East Palo Alto, CA, East Palo Alto, CA, Rebecca Hooley, Bingham McCutchen, LLP, San Francisco, CA, for CMT Partners.

Mark P. Spzak, Luke T. Cadigan, Christopher R. Dillon, Ropes & Gray, Boston, MA, Martin F. Cunniff, Edward Han, Mark D. Wegener, Howrey & Simon, Washington, DC, for Rogers Wireless, Inc.

Philip C. Swain, Vickie L. Henry, John E. Nilsson, Stephen B. Deutsch, Foley, Hoag & Eliot, Boston, MA, for Western Wireless Corp.

Nicholas G. Papastauros, Nixon Peabody, Boston, MA, Monique M. Drake, Gibson, Dunn & Crutcher, LLP, Denver, CO, Cingular Wireless LL.

Scott G. Lindvall, Pierre R. Yanney, James Hanft, Robert Laurenzi, Darby & Darby, New York City, for Airtouch Communications, Inc.

Laura Brutman, Edward V. DiLello, Guy Yonay, Darby & Darby, New York City, Jennifer L. Conrad, Testa, Hurwitz & Thibeault, LLP, Boston, MA, for Cillco Partnership.

## MEMORANDUM

HARRINGTON, Senior District Judge.

Defendant Rogers Wireless, Inc. ("Rogers") is a Canadian corporation that is accused of infringing upon patents held by Plaintiff Freedom Wireless, Inc. ("Freedom Wireless"). On November 29, 2001, Rogers brought a motion for summary judgment arguing that this Court lacked personal jurisdiction over Rogers and, alternately, that Rogers did not make, use, or sell the patented invention "within the United States" as required under Title 35, Section 271(a), of the United States Code. *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972). On April 16, 2002, this Court granted Rogers' motion for summary judgment on the ground that Rogers did not use the patented invention "within the United States." *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 198 F.Supp.2d 11, 12 (D.Mass. 2002). At that time, this Court declined to address the issue of personal jurisdiction because the territoriality requirement of Section 271(a) provided an alternative, non-constitutional basis for reaching the same conclusion. *Id.* at 14 & n. 7.

In response to this Court's decision to grant Rogers' motion for summary judgment, Freedom Wireless filed a motion requesting leave to amend its complaint to add a new cause of action against Rogers under Section 271(f)(2). That section, which expands infringement to include anyone who "supplies or causes to be supplied in or from the United States any component of a patented invention," allows a plaintiff to maintain a suit for infringement even if the patented invention is not used within the United States. *See* 35 U.S.C. § 271(f)(2). In defense of its motion to amend, Freedom Wireless argues that it was unaware of the facts underlying the alleged Section 271(f)(2) violation until

Rogers filed its motion for summary judgment. Nevertheless, because this Court now rules that it lacks personal jurisdiction over Rogers and the proposed amendment would be futile, Freedom Wireless' motion to amend must be denied.

## I. *Background*

The facts relevant to the issue of personal jurisdiction are essentially the same as those that were relevant to the issue of extraterritorial infringement addressed in this Court's Order granting summary judgment dated April 16, 2002. Consequently, the following background facts have been recycled from the April 16 Order. *See Freedom Wireless,* 198 F.Supp.2d at 12–14.

Prepaid wireless is a form of wireless telephone communications that allows users to pay in advance for cellular telephone service. Traditional wireless service is provided on credit, and the provider bills the user for the service at the end of each month. Prepaid wireless service, on the other hand, works something like a deposit system, with the subscriber paying a certain sum of money into an account and drawing upon that account each time the service is used. By allowing customers to pay for wireless telephone subscriptions in advance, prepaid wireless is an effective means of supplying wireless service to those customers whose poor credit histories would otherwise make this impossible.

Rogers is a Canadian wireless telephone service provider—sometimes called a carrier—that sells wireless telephone equipment and services exclusively to Canadian residents. Rogers is not licensed to conduct business in the United States. It does not own any assets or property in the United States and does not maintain an office here. Rogers does not direct any advertising or marketing toward the United States, and its services and equipment are not available for purchase by United States residents.

In addition to providing basic wireless telephone service, Rogers also offers prepaid wireless service to its customers. During the relevant time period, however, Rogers lacked either the technology or the desire to create and manage its own prepaid wireless billing system. Therefore, to provide its customers with the option of prepaid wireless service, Rogers contracted with co-defendant Boston Communications Group, Inc. ("BCGI") to provide the prepaid billing services that were necessary for Rogers to supply prepaid wireless service to its customers.

BCGI is a Massachusetts based company that provides prepaid wireless billing services to wireless carriers, such as Rogers, through the use of its C2C platform. Described in its most generic sense, the C2C platform is simply BCGI's proprietary name for a system where wireless calls that have been designated as prepaid are rerouted from the outside carrier—in this case Rogers—to BCGI's C2C network. The C2C network, in turn, is BCGI's name for its prepaid billing processing system, which consists of multiple receiving stations, called nodes, linked to a central computer database that analyzes the calls to determine whether the caller has sufficient funds to complete the call and the maximum duration of the call.

The prepaid wireless service that Rogers provided to its customers through its use of BCGI's billing system operated in the following manner: A Rogers prepaid wireless customer would place a telephone call by dialing a destination phone number and pressing the send key on the telephone. That call, along with signaling information that included the caller's identifying phone number, would be received in Canada by one of Rogers' radio-towers and then transmitted to one of Rogers'

mobile telephone switching offices, which were also located exclusively within Canada. The mobile telephone switching office would then identify the call as coming from a prepaid subscriber and would reroute the call to one of the BCGI nodes located in Canada.

Once the BCGI node, located in Canada, had received the call forwarded by Rogers, it would send the call, along with information relating to the caller's identity and location, to the BCGI central database located in Woburn, Massachusetts. The BCGI database, which had current information relating to the caller's prepaid account balance stored in its memory, would then check the caller's current prepaid account balance, determine the cost of the requested call, calculate the maximum duration for the call, and send this information back across the border to the BCGI node located in Canada. Finally, the BCGI node in Canada would forward the call, along with the information collected from the database in Massachusetts, back to Rogers' mobile telephone switching office so that the call could be connected.

## II. *Analysis*

[1, 2] This Court cannot compel Rogers to defend a lawsuit for patent infringement unless it is subject to personal jurisdiction within this forum. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed.Cir.1994). A Federal District Court has personal jurisdiction over a non-resident defendant in a patent case only if the forum state's long-arm statute has authorized the exercise of jurisdiction and it is not otherwise inconsistent with the requirements of the Due Process Clause of the United States Constitution. *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 (Fed.Cir.1999); *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1358–59 (Fed.Cir.1998). In this case, because the Massachusetts Supreme Judicial Court has interpreted the state's long-arm statute as coextensive with the limits of due process, it is possible to "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard v. Ness,* 290 F.3d 42, 52 (1st Cir.2002) (citing *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.,* 361 Mass. 441, 280 N.E.2d 423 (1972)).

[3] Due process requires that a defendant must have "certain minimum contacts" with the forum state in order to be subject to personal jurisdiction. *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154. Furthermore, these minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Asahi Metal Indus. Co. v. California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). This ensures that the state and federal courts do not transgress the "territorial limitations" that mark the outer boundaries of their sovereignty. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Thus, before a defendant may be haled into court to defend a lawsuit, he must have purposefully directed actions toward the forum state sufficient to satisfy a finding of minimum contacts. *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026.

In addition to minimum contacts, due process also forbids a court from exercising personal jurisdiction over a defendant "under circumstances that would offend 'traditional notions of fair play and substantial justice.' " *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed.

278 (1940)). In other words, even if minimum contacts exist, a court still cannot exercise jurisdiction where it would create an unreasonable burden on the defendant in light of the combined interests of the plaintiff and the forum state. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559. This is because, in addition to recognizing the territorial limitations of the forum, due process also "protects the defendant against the burdens of litigating in a distant or inconvenient forum." *Id.*

In a suit for patent infringement, the law of the United States Court of Appeals for the Federal Circuit controls the issue of personal jurisdiction. *3D Systems, Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1376–77 (Fed.Cir.1998); *Beverly Hills Fan,* 21 F.3d at 1564. The Federal Circuit has outlined a three-factor test to determine whether a district court has personal jurisdiction over a defendant in a patent case. *Akro Corp. v. Luker,* 45 F.3d 1541, 1545–46. Under this three-factor test, personal jurisdiction depends on: "(1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *HollyAnne Corp.,* 199 F.3d at 1307–08 (citing *Akro,* 45 F.3d at 1545–46).

Beginning with the first factor in the Federal Circuit's test for personal jurisdiction, this Court finds that Rogers did not purposefully direct any activities at the residents of Massachusetts or the United States. *See Akro,* 45 F.3d at 1546; *HollyAnne,* 199 F.3d at 1307. Rogers is a Canadian corporation that conducts business exclusively in Canada with Canadian residents. Rogers does not conduct any business in the United States. Rogers has no equipment, assets, employees, distributors, or offices in the United States. Rogers has not directed any advertising or

marketing at the United States, and its products and services are not available for purchase by United States residents.

Rogers' only connection with Massachusetts—and its only relevant connection with the United States—is that it contracted to purchase billing services from BCGI. BCGI, which is based in Massachusetts, helped Rogers calculate the cost and maximum duration of prepaid wireless telephone calls so that Rogers could accurately bill its clients' accounts. This arrangement worked so that every time one of Rogers' clients placed a prepaid wireless telephone call, Rogers would forward the call—along with information relating to the caller's identity and location—to a BCGI node located in Canada. The BCGI node would then read the information and send an electronic query to its central database in Woburn, Massachusetts, which would perform the necessary calculations and send a prompt response back to the node in Canada. Once the BCGI node had received the response from the central database, it would forward the information to Rogers and the call could be completed.

Nothing about Rogers' arrangement with BCGI can be construed as the purposeful direction of activities at the residents of Massachusetts. *See 3D Systems,* 160 F.3d at 1380. Rogers made no attempt to solicit business in Massachusetts or to benefit from the Massachusetts market. *World–Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. 559. Although Rogers purchased services from a Massachusetts business, the mere act of purchasing from an in-state seller is usually an insufficient basis for the assertion of personal jurisdiction. *E.g., Health Communications, Inc. v. Mariner Corp.,* 860 F.2d 460, 464 (D.C.Cir.1988) ("Appellant seems to confuse a distant purchaser 'reaching out' to a seller in the forum state with a seller

'reaching out' to a distant state in order to do business there."). Thus, even considering Rogers' arrangement with BCGI, Rogers did not purposefully direct any activities at the residents of Massachusetts or the United States.

Having found that Rogers did not direct any activities at the residents of the forum state, it logically follows that the claim could not have arisen out of activities that were directed at the residents of the forum state. *See Akro,* 45 F.3d at 1547; *HollyAnne,* 199 F.3d at 1307. Therefore, proceeding to the third factor in the Federal Circuit's test for personal jurisdiction, this Court rules that assertion of personal jurisdiction over Rogers in this case would be unreasonable and unfair. *Id.* at 1307–08. The test for unreasonableness under Federal Circuit law is a "multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 429 (Fed.Cir.1996). More specifically, the interests to be balanced under this test include: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interests of the states in furthering their social policies." *Id.*

In this case, the burden that would be placed on Rogers if it were required to defend itself in this forum is severe. In *Asahi,* the Supreme Court stated that the burden of defending a suit in a foreign jurisdiction is particularly severe where the defendant is a resident of a foreign nation. 480 U.S. at 114, 107 S.Ct. 1026 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Because Rogers is a foreign corporation, in addition to the usual burden being forced to travel to the forum state, it has the additional burden of being forced "to submit its dispute ... to a foreign nation's judicial system." *Asahi,* 480 U.S. at 114, 107 S.Ct. 1026.

In contrast to the heavy burden that would be borne by Rogers if it were forced to submit to the jurisdiction of this Court, the interests of the plaintiff and the forum state are slight. Plaintiff Freedom Wireless made a conscious business decision not to file for a Canadian patent. The fact that it cannot extend its United States patent rights to cover the Canadian market was a risk that was freely assumed. Furthermore, although the forum state has legitimate interests in commerce and scientific development, those interests are substantially diminished with respect to activity that occurs outside of the borders of the domestic market. *See Asahi,* 480 U.S. at 114–15, 107 S.Ct. 1026. Finally, "[b]ecause the plaintiff is not a [Massachusetts] resident, [Massachusetts'] legitimate interests in the dispute have considerably diminished." *Id.*

The Supreme Court has warned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi,* 480 U.S. at 115, 107 S.Ct. 1026 (quoting *United States v. First National City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)). In such cases, the interests of the defendant's home nation, "as well as the Federal Government's interest in its foreign relations policies, will best be served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an *unwilling-*

26

*ness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State."* Asahi, 480 U.S. at 115, 107 S.Ct. 1026 (emphasis added). Therefore, in light of the interests and policies involved, this Court finds that this is one of those "rare situation[s] in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Akro,* 45 F.3d at 1549.

Because Rogers does not have minimum contacts with Massachusetts or the United States to justify the exercise of jurisdiction, and because the exercise of jurisdiction under the circumstances would be unreasonable and unfair, this Court lacks personal jurisdiction over Rogers. Additionally, in light of this Court's lack of personal jurisdiction over Rogers, any attempt by Freedom Wireless to amend its complaint to add an additional cause of action against Rogers would be futile. Thus, Freedom Wireless' motion for leave to amend its complaint and for reconsideration of the Court's April 16, 2002 Order is denied.