# United States Court of Appeals for the Federal Circuit

2008-1109


THE CAMPBELL PET COMPANY,

Plaintiff-Appellant,

v.

THERESA MIALE and TY-LIFT ENTERPRISES,

Defendants-Appellees.

Kurt M. Rylander, Rylander & Associates PC, of Vancouver, Washington, argued for plaintiff-appellant.

F.T. Alexandra Mahaney, Wilson Sonsini Goodrich & Rosati, of San Diego, California, argued for defendants-appellees.

Appealed from: United States District Court for the Western District of Washington

Judge Ronald B. Leighton

# United States Court of Appeals for the Federal Circuit

2008-1109

THE CAMPBELL PET COMPANY,

Plaintiff-Appellant,

v.

THERESA MIALE and TY-LIFT ENTERPRISES,

Defendants-Appellees.

Appeal from the United States District Court for the Western District of Washington in case no. 07-CV-5375, Judge Ronald B. Leighton.

_____

DECIDED: September 18, 2008

_____

Before BRYSON, ARCHER, and PROST, Circuit Judges.

BRYSON, Circuit Judge.

In this appeal concerning in personam jurisdiction, we are asked to decide whether the presence of the defendant patent owner in the State of Washington and her activities there relating to the enforcement of her patents are sufficient to allow a federal district court in that state to exercise in personam jurisdiction over the defendants, a California corporation and a California resident. The district court held that the patent owner's activities were not sufficient to allow it to exercise in personam jurisdiction over the defendants. We disagree, and we therefore reverse the dismissal of the complaint.

I

The allegations of plaintiff Campbell Pet Company concerning personal jurisdiction, which the district court accepted as true for purposes of its jurisdictional ruling, are the following: Campbell is a company located in Vancouver, Washington, that manufactures and sells pet accessories and products, including mobile folding stretchers for transporting injured animals. Defendant Ty-Lift Enterprises is a California corporation that is wholly owned by defendant Theresa Miale and her mother. The company sells mobile stretchers for transporting injured animals, including the Ty-Lift I model folding animal stretcher. Two U.S. patents owned by Ms. Miale, U.S. Pat. Nos. 6,199,508, and 6,230,662, relate to the Ty-Lift I stretcher. Ty-Lift operates a website on the Internet where it advertises its products and where customers can purchase them. It also makes sales through means other than its Internet site.

Between 1999 and 2006, Ty-Lift had gross sales averaging $93,600 per year. During that period, the company sold 12 units, either stretchers or tables, to residents of the State of Washington, for a total of $13,851. Between 2000 and 2002, Ty-Lift sold eight Ty-Lift I stretchers to Washington residents, for a total sales price of $3,149.

In June 2007, Ms. Miale attended a three-day convention in Seattle, Washington, sponsored by the American College of Veterinary Internal Medicine. During that convention, Ms. Miale demonstrated her products and offered them for sale. In the course of the convention, she took two orders for tables from residents of Virginia and New York, for a total purchase price of $9,400. Plaintiff Campbell also had a display at the convention featuring its products. In the course of the convention, Ms. Miale and her mother confronted several of Campbell's employees who were attending the

convention and accused them of infringing the Miale patents. According to the Campbell employees, Ms. Miale said that she had contacted her patent attorney and threatened Campbell with patent litigation, stating that patent attorneys and litigation were expensive. The Campbell employees further alleged that the convention manager told them that Ms. Miale and her mother had asked that the Campbell display be removed from the convention because it infringed Ms. Miale's patents, but that the convention manager had declined to do so on the ground that she was not qualified to evaluate a claim of patent infringement. The Campbell employees also alleged that a customer informed them that Ms. Miale and her mother were "bad mouthing" Campbell and its products to Campbell's customers, and referred to Campbell as "copiers of their patent."

In the month following the convention, Ty-Lift sent a letter to Campbell claiming that Campbell's mobile folding stretcher infringed the Miale patents. Shortly thereafter, Campbell filed suit in the United States District Court for the Western District of Washington seeking a declaration of noninfringement and invalidity with respect to the Miale patents. In response, Ty-Lift moved to dismiss the complaint for lack of personal jurisdiction.

The district court granted the motion to dismiss. The court first held that the level of contact between the defendants and the forum state was not sufficiently "substantial" and "continuous and systematic" to justify the exercise of general jurisdiction. Campbell Pet Co. v. Miale, No. C07-5375 (W.D. Wash. Nov. 2, 2007), citing Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed. Cir. 1998).

The district court noted that the degree of contact with the forum state that is necessary to establish general jurisdiction is "quite high."  In this case, the court held, the defendants' contacts with the State of Washington were limited to a total of 12 sales over eight years and attendance at the 2007 convention at which they made no sales to Washington residents.  The court pointed out that the defendants have no office or sales representative in Washington, are not registered in Washington, and pay no taxes in Washington.  The court also rejected Campbell's contention that general jurisdiction could be found based on the defendants' website, because the website had produced no sales in Washington during the eight years it had been in existence and because the defendants had no contracts or other business arrangements relating to the website with any companies based in Washington.

With respect to specific jurisdiction, the district court asked the two pertinent questions that apply to all inquiries into specific jurisdiction: (1) whether the forum state's long-arm statute would permit service of process under the circumstances of the case, and (2) whether the assertion of personal jurisdiction would violate due process.  The Washington long-arm statute permits the state's courts to exercise personal jurisdiction over any defendant who transacts any business within the state, and under Washington law, the "transaction of any business" is considered to be co-extensive with the limits of due process with respect to the exercise of personal jurisdiction.  The court therefore turned to the due process question, which requires that (1) the non-resident defendant purposely do some act or consummate some transaction in the forum state, (2) the cause of action arise from or be connected with that transaction, and (3) the assumption of jurisdiction by the forum state not offend traditional notions of fair play

and substantial justice. The court found the first factor satisfied in light of the defendants' sales to customers in Washington and Ms. Miale's participation in a trade show there. However, the court found that the second factor was not satisfied, because "the plaintiff claimed no injury flowing from the defendant's production, marketing and sale of its products in the forum state." The court consequently concluded that there was "no nexus between the defendant's marketing and sale of its products in the forum state and the subject matter of the plaintiff's claims, which concerned only the patent's validity." Accordingly, the district court dismissed the complaint for lack of personal jurisdiction over the defendants.

Campbell filed a motion for reconsideration, noting that the district court had not addressed Campbell's claim of noninfringement and the relationship between that claim and the defendants' conduct at the June 2007 convention. In response to the reconsideration motion, the district court issued a supplemental opinion altering its reasoning. In the opinion on reconsideration, the court found that in light of the defendants' conduct at the June 2007 convention both the first and second factors in the specific jurisdiction test were satisfied. The court found, first, that the defendants had "acted purposefully and consummated transactions" in the State of Washington, and, second, that the claim of noninfringement was sufficiently connected with the defendants' actions within the state. With respect to the third factor, however, the court concluded that principles of fair play and substantial justice "afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." The court added that standards of fairness demand that a patentee "be insulated from personal jurisdiction in a distant forum when its only contacts with that

forum were efforts to give proper notice of its patent rights." Because the court regarded the actions of the defendants as "akin to submitting cease and desist letters," the court held that the third factor bearing on specific jurisdiction was not satisfied. The court therefore denied the motion for reconsideration.

II

The district court was clearly correct in ruling that it did not have general jurisdiction over the defendants. As the district court noted, a forum does not have general jurisdiction over a defendant business entity unless the defendant has contacts with the forum state that qualify as "continuous and systematic general business contacts." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Perkins v. Benguet Mining Co., 342 U.S. 437, 438 (1952). The district court found that there was no basis for exercising general jurisdiction over the defendants in light of the fact they had only made 12 sales over eight years to customers in the State of Washington, which the court found to reflect far less than the required "continuous and systematic" contacts with the state.

In challenging the district court's ruling, Campbell relies on this court's decision in Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455 (Fed. Cir. 1997), for the proposition that cease-and-desist letters combined with ongoing business in the forum state can provide a court with general jurisdiction over a defendant. Campbell's reliance on Genetic Implant Systems for its argument concerning general jurisdiction is misplaced, as that case addressed the requirements for specific jurisdiction. Campbell's reliance on the defendants' maintenance of a website is also insufficient to give rise to general jurisdiction over the defendants in the State of Washington, as the

website is not directed at customers in Washington and does not appear to have generated any sales in Washington. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419-20 (9th Cir. 1997). Thus, as in Trintec Industries, Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275 (Fed. Cir. 2005), the defendants' website does not establish general jurisdiction in Washington, because it was not specifically directed at Washington, "but instead is available to all customers throughout the country who have access to the Internet. . . . [T]he ability of [forum] residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the [forum]." Id. at 1281.

Campbell also contends that the defendants have made sufficient sales to customers in Washington to establish general jurisdiction there. We agree with the district court, however, that the very small volume of sales that the defendants have made to customers in Washington falls far short of enough to reflect the substantial and continuous presence in the state necessary to support general jurisdiction. As the district court noted, the evidence showed that the defendants made only 12 sales to Washington residents in eight years, for a total of less than $14,000 in gross revenue (approximately two percent of the defendants' total sales), and in four of those years they made no sales in Washington at all. That degree of commercial activity is far short of the amount that was present in the Helicopteros Nacionales case, yet in that case the Supreme Court held that even that degree of activity was insufficient to support the exercise of general jurisdiction over the defendant. The instant case is a classic case of sporadic and insubstantial contacts with the forum state, which are not sufficient to establish general jurisdiction over the defendants in the forum.

III

As the district court noted, even where general jurisdiction is not available, specific jurisdiction may be exercised by a district court in the forum state if the state's long-arm statute would permit service of process on the defendant under the circumstances of the case, and if due process considerations would permit the exercise of personal jurisdiction over the defendant under those circumstances. See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104-05 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-76 (1985). In a case such as this one, in which the state's long-arm statute extends to the limits of due process, the two-part inquiry collapses into one—whether due process considerations permit the exercise of jurisdiction.

Resolving that question requires the court to address two issues that bear on whether the defendant has purposefully established minimum contacts with the forum state: (1) whether the defendant "has purposefully directed his activities at residents of the forum"; and (2) whether "the litigation results from alleged injuries that arise out of or relate to those activities." Burger King, 471 U.S. at 472-73 (citations and internal quotations omitted). If the court concludes that those two conditions are satisfied, a third factor comes into play, i.e., "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." Id. at 476, quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). The Supreme Court made clear that the third factor is to be applied sparingly. When a defendant seeks to rely on the "fair play and substantial justice" factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, "he must present a compelling

case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. This court has echoed that restrictive characterization of the third Burger King factor, stating that "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" Akro Corp. v. Luker, 45 F.3d 1541, 1549 (Fed. Cir. 1995), quoting Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994). In Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003), we set forth in some detail the factors bearing on the "reasonableness" inquiry under the Burger King standard:

> The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

The district court found that the first two parts of the three-part test for specific jurisdiction were satisfied, and we agree. As noted, the court found that the defendants had purposely engaged in transactions in Washington during the three-day convention in June 2007, and the court found that the cause of action for a declaratory judgment of patent noninfringement and invalidity arose from or was connected with those transactions. However, relying on our decision in Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed. Cir. 2003), the court found that due process considerations barred the court from exercising personal jurisdiction over the defendants based on the activities at the June 2007 convention in Seattle.

As the district court correctly noted, we have fashioned a rule, as part of the "reasonable and fair" portion of the due process inquiry in personal jurisdiction cases, that, without more, a patentee's act of sending letters to another state claiming infringement and threatening litigation is not sufficient to confer personal jurisdiction in that state. See Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1202 (Fed. Cir. 2003). That rule is based on a policy judgment that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." Red Wing Shoe, 148 F.3d at 1361.

Based on that rationale, we have held that "the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360-61 (Fed. Cir. 2001) (citing cases). As the court put the matter in Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997), beyond the sending of an infringement letter, "[o]ther activities are required in order for a patentee to be subject to personal jurisdiction in the forum." Where the patentee has engaged in sufficient additional conduct, beyond merely informing others of its patent rights and its intention to enforce those rights through litigation, we have held that the policy of Red Wing Shoe does not afford the patentee protection against a declaratory judgment action brought in the foreign forum to which the patentee directed its actions. See, e.g., Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1366-67 (Fed. Cir. 2006) (entry into an exclusive license with an entity in the forum state is a sufficient additional factor to justify the exercise of personal jurisdiction); Electronics for Imaging,

340 F.3d at 1351 (other forum state activities by the defendant, such as visiting the plaintiff, hiring an attorney, and telephoning the plaintiff there on several occasions were sufficient to justify personal jurisdiction over the plaintiff); Inamed Corp., 249 F.3d at 1361 (defendant's successful negotiation of licensing agreements with plaintiff constituted sufficient "other activities" beyond the sending if an infringement letter justifying subjecting the patentee to personal jurisdiction in the forum state); Genetic Implant Sys., 123 F.3d at 1458 (personal jurisdiction upheld where, beyond sending cease-and-desist letters, defendant engaged in a program to develop a market in the forum state, including developing customer lists and advertising there); Akro Corp., 45 F.3d at 1548-49 (exclusive licensing of the accused infringer's competitor in the forum state constituted the required "additional activity" beyond sending warning letters).

In this case, the district court erred by characterizing Ms. Miale's actions at the June 2007 convention as constituting nothing more than attempts to inform Campbell of suspected infringement. As Campbell points out, its employees' affidavits assert that Ms. Miale did more at the trade show than simply inform Campbell that its animal stretchers might infringe her patents. The affidavits state that Ms. Miale attempted to have Campbell's allegedly infringing products removed from the convention and that she told Campbell's customers that Campbell's products were infringing. Of critical importance to the issue of personal jurisdiction, Ms. Miale's attempts at "extra-judicial patent enforcement" were targeted at Campbell's business activities in Washington and can fairly be characterized as attempts to limit competition from Campbell at the Seattle convention. Those efforts go beyond simply informing the accused infringer of the patentee's allegations of infringement.

Although none of our precedents have facts closely akin to the facts of this case, other courts have found personal jurisdiction in circumstances quite similar to those in this case. In Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063 (10th Cir. 2008), the plaintiffs sold products on eBay from their home in Colorado. The defendants, believing that one of the plaintiffs' products infringed their copyrights, contacted the plaintiffs by email in Colorado to threaten suit and also contacted eBay in California, which resulted in the plaintiffs' auction being suspended. The plaintiffs then filed a declaratory judgment action in Colorado. The defendants filed a motion to dismiss, arguing that the district court in Colorado lacked jurisdiction over them.

On appeal from a dismissal order, the Tenth Circuit held that personal jurisdiction was proper in Colorado. In response to the defendants' argument that under Red Wing Shoe they should not be subject to personal jurisdiction in Colorado simply for having sent a notice of infringement to the plaintiffs in that state, the court of appeals held Red Wing Shoe distinguishable on the ground that the defendants "went well beyond providing notice to plaintiffs of the claimed infringement and seeking settlement; [they] purposefully caused the cancellation of their auction and allegedly threatened their future access to eBay and the viability of their business." 514 F.3d at 1082. Rather than simply sending a cease-and-desist letter to the plaintiffs, the defendants "communicated their complaint to a third party with the intent that the third party take action directly against plaintiffs' business interests, something that thereafter occurred." Id. The court therefore concluded that the exercise of jurisdiction was not protected by the policy consideration underlying Red Wing Shoe and that it was not "unfair or unjust" to allow the suit to proceed in Colorado.

Likewise, the Ninth Circuit held that a California district court could exercise personal jurisdiction over an out-of-state defendant in a somewhat similar situation. In Bancroft & Masters, Inc. v. Augusta National, Inc., 223 F.3d 1082 (9th Cir. 2000), the plaintiff, a California corporation, registered the Internet domain name "masters.com." According to the plaintiff's allegations, defendant Augusta National, which operates the Masters golf tournament, sent a cease-and-desist letter to the plaintiff in California and sent a second letter protesting the plaintiff's use of the domain name to Network Solutions Inc. ("NSI"), at that time the sole registrar of Internet domain names. That letter, according to the plaintiff, was intended to trigger NSI's dispute resolution procedures with the ultimate purpose of appropriating the "masters.com" domain name for itself. The Ninth Circuit held that the defendant's conduct was sufficient to make it subject to suit in California. As the Ninth Circuit explained in a later case, under Red Wing Shoe a cease-and-desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter, but the second letter went beyond the limited scope of the Red Wing Shoe policy and subjected the defendant to personal jurisdiction in the forum where the target of the defendant's conduct was located. See Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 433 F.3d 1199, 1208 (9th Cir. 2006).

In this case, as in those two cases, the defendants' conduct went beyond simply informing the plaintiff that they regarded the plaintiff's products as infringing. According to the plaintiff's allegations, which were credited by the district court for purposes of the motion to dismiss, the defendants took steps to interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff. Although Ms. Miale's efforts in that regard were not successful (unlike the efforts of the defendant in the Dudnikov

case), in that the exhibit manager at the Seattle convention allegedly declined to remove Campbell's exhibit at Ms. Miale's behest, the pertinent step taken by Ms. Miale was the request that action be taken. The fact that her efforts did not succeed does not affect whether it is fair and just to treat her actions directed at Campbell as sufficient to trigger personal jurisdiction in the forum state. Moreover, unlike the situation in both Dudnikov and Bancroft & Masters, Ms. Miale's efforts at private enforcement occurred within the forum state and while she was personally present there. Under these circumstances, we hold that it would not be contrary to the principles of the Red Wing Shoe line of cases for the district court to assert jurisdiction over Ms. Miale and Ty-Lift based on Campbell's allegations.

Finally, the defendants argue that it would offend traditional notions of fair play and substantial justice to subject Ty-Lift and Ms. Miale to suit in the Western District of Washington, in light of the small size of the defendants' business and the burden that would be entailed in forcing the defendants to defend this suit in that district. While the burdens of litigation in remote districts can be considerable, it appears that Campbell is also a small business and that forcing Campbell to defend a patent infringement action in a remote jurisdiction such as the Southern District of California would be similarly burdensome for Campbell. As for the defendants' contention that California has an interest in discouraging injuries that occur within the state, including patent infringement, Campbell counters with the argument that Washington has an interest in protecting its residents from charges of unlawful conduct and efforts to interfere with their business activities. See Akro Corp., 45 F.3d at 1549 ("The injury of which Akro complains— restraint of its production of goods by means of a non-infringed, invalid and/or

unenforceable patent—falls well within the boundaries of the sorts of injuries that Ohio has an interest in discouraging."). In any event, the district court predicated its "fairness" decision entirely on the Red Wing Shoe policy protecting the right of patentees to communicate allegations of infringement, and not on the relative burdensomeness on the parties of litigation in Washington as opposed to litigation in another forum. Finally, to the extent that the defendants' fairness argument is based on their contention that "it is Campbell who copied a patented product," that argument cannot be given weight because it assumes the correctness of the very allegation that is at issue in the litigation.

IV

Other than asserting that Ms. Miale's actions at the June 2007 convention constituted nothing more than attempts to inform Campbell of the Miale patents, the defendants argue that the portions of the affidavits on which Campbell relies are inadmissible hearsay. We need not address Ms. Miale's hearsay objection at this stage, however, because this appeal merely requires that we address whether the uncontroverted facts alleged by Campbell in its affidavits and complaint support a prima facie showing that the district court had personal jurisdiction over the defendants. See Akro Corp., 45 F.3d at 1543; 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004) (the plaintiff "needs only make a prima facie showing when the district judge restricts her review of the Rule 12(b)(2) motion solely to affidavits and other written evidence."); see also id. § 1364 (district court has discretion to consider hearsay evidence introduced in conjunction with a Rule 12(b)

motion).  The court in <u>Mattel, Inc. v. Greiner & Hausser GMBH</u>, 354 F.3d 857 (9th Cir.

2003), explained how cases in this procedural posture are to be treated:

> Where, as here, the district court did not hold an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction to survive the motion to dismiss. To make that showing, Mattel need only demonstrate facts that, if true, would support jurisdiction over the Defendants.  Unless directly contravened, Mattel's version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in Mattel's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.

> The procedural posture of this case is important.  We do not decide whether Mattel has proven its contentions, but only whether it has made a prima facie case for personal jurisdiction.

<u>Id.</u> at 862.  Although the defendants objected to Campbell's hearsay evidnece, they did

not controvert the truth of those assertions.  Like the district court, we therefore assume

the truth of Campbell's allegations.[1]  Our ruling on this issue, however, does not mean

that Campbell has no obligation at any point to prove the truth of its jurisdictional

allegations.  On remand, the district court may in its discretion hold an evidentiary

hearing to determine whether Campbell can prove the district court's jurisdiction over

the defendants by a preponderance of the evidence.

V

The defendants also argue that Ms. Miale's conduct at the 2007 convention

cannot serve as the basis for exercising personal jurisdiction over her because she was

acting in her official capacity as the president of Ty-Lift, not in her personal capacity.

The defendants therefore argue that, while the district court might have jurisdiction over

---

[1]    Although the defendants argue that hearsay evidence may not be admitted in connection with a motion to dismiss for lack of personal jurisdiction, this court has held that there is no strict prohibition on a court's consideration of hearsay in connection with such a motion.  <u>Akro Corp.</u>, 45 F.3d at 1546-47; <u>Beverly Hills Fan</u>, 21 F.3d at 1562.

Ty-Lift, it cannot assert jurisdiction over Ms. Miale.  That argument is without merit.  The Supreme Court rejected a nearly identical argument made by the petitioners in <u>Calder v. Jones</u>, 465 U.S. 783 (1984).  The petitioners, a reporter and an editor for the <u>National Enquirer</u>, claimed that the <u>National Enquirer</u>'s circulation of an article in California could not serve as the basis for personal jurisdiction over them.  <u>Id.</u> at 789.  The Court stated:

> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually.

<u>Id.</u> at 790.  We likewise reject the defendants' argument that Ms. Miale is not subject to personal jurisdiction based on her activities in and directed to the forum state.  Because we reject that argument, we also reject the defendants' argument that the district court's dismissal can be affirmed on the basis that Ms. Miale, as the patent owner, is an indispensable party over whom the district court lacked jurisdiction.

VI

Because Campbell's allegations in its affidavits and complaint provide a sufficient basis for the district court to exercise specific jurisdiction over the defendants, we reverse the district court's dismissal of Campbell's complaint and remand the case to the district court for further proceedings consistent with this opinion.

<u>REVERSED and REMANDED</u>.